IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DARRIAN KOCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 20-03311-CV-S-WBG |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff Darrian Koch's appeal of the Acting Commissioner of Social Security's final decision denying his applications for disability insurance benefits and supplemental security income. After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Plaintiff was born in 1968 and has at least a high school education. R. at 28, 87, 89, 197, 203. He previously worked as a service manager at car dealerships. Tr. at 28, 89-92, 105-06, 226-29. In April 2018, Plaintiff applied for disability insurance benefits and supplemental security income, alleging a disability onset date of May 1, 2015. R. at 18, 197-204.[2] In November 2018, his applications were denied. R. at 18, 166-71. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). R. at 18, 172-73.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, is automatically substituted as Defendant in this suit.

[2] Plaintiff later amended his alleged disability onset date to June 27, 2017. R. at 18, 20, 86.

On November 26, 2019, ALJ Mary Leary held a hearing during which Plaintiff and a vocational expert testified. R. at 82-110. Thereafter, on January 8, 2020, the ALJ issued a decision finding Plaintiff is not disabled. R. at 18-30. She determined Plaintiff's severe impairments include "mild neurocognitive disorder, epilepsy, mild diffuse cerebral atrophy, generalized anxiety disorder, and major depressive disorder." R. at 20. Additionally, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:

> [Plaintiff can] never climb ladders ropes or scaffolds; he must avoid concentrated exposure to extreme cold, extreme heat, loud noises as defined by the selected characteristics of occupations, respiratory irritants such as fumes, odors, dust, gases, and poor ventilation, and all exposure to hazards such as dangerous moving machinery and unprotected heights, in occupations that do not involve driving. He can understand, remember and carry out uncomplicated commands involving simple instructions and make simple work related decisions. He can sustain concentration, persistence and pace through simple tasks. He would be off task 5 percent of the workday. He can perform job tasks independently, appropriately and at a consistent pace in goal oriented work in which job tasks do not have to be completed within a strict time deadline. He can tolerate a low level of work pressure defined as work not requiring multitasking, detailed job tasks, significant independent judgment, very short deadlines, teamwork in completing job tasks, more than occasional changes in work setting. He would be absent from work 4 times per year (two days every 6 months).

R. at 23.

Based on her review of the record, her RFC determination, and the testimony at the hearing, the ALJ concluded Plaintiff could work as a box bender, dryer attendant, and packager. R. at 28-29. Plaintiff unsuccessfully appealed the ALJ's decision to the Appeals Council. R. at 1-6, 193-96. He now appeals to this Court. Doc. 3.

## II.   STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were

2
Case 6:20-cv-03311-WBG   Document 25   Filed 03/31/22   Page 2 of 15

applied. 42 U.S.C. § 405(g); *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). This Court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted). "As long as substantial evidence supports the ALJ's decision, [a reviewing court] may not reverse because substantial evidence also 'would have supported a contrary outcome, or because [the court] would have decided the case differently.'" *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (quoting *Andrews v. Collins*, 791 F.3d 923, 928 (8th Cir. 2015)). The Eighth Circuit "defer[s] heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue,* 621 F.3d 734, 738 (8th Cir. 2010).

"It is not the role of [a reviewing] court to reweigh the evidence presented to the ALJ or to try the . . . case de novo." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (citation omitted). When reviewing the record for substantial evidence, a court may not substitute its own judgment for that of the ALJ. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004). In evaluating for substantial evidence, a court must consider evidence supporting the Commissioner's decision as well as evidence detracting from it. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). "If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions," the court must affirm. *See id.*

### III. DISCUSSION

Plaintiff argues the ALJ's RFC is not supported by substantial evidence. Doc. 12 at 1, 6-17. One's RFC is the "most you can still do despite your limitations." 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1). The ALJ must base the RFC on "all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) and *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Because the RFC is a medical question, "an ALJ's assessment of it must be supported by some medical evidence of [Plaintiff's] ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id*. Further, it is well-settled that an ALJ may properly consider the opinion of an independent or non-examining physician in determining the RFC. *See*, *e.g.*, *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (citations omitted).

Plaintiff argues remand is required because the ALJ (A) failed to account for the mental limitations set forth by his physicians, and (B) improperly evaluated his subjective complaints. Doc. 12 at 6-17.[3] The Acting Commissioner contends the ALJ "crafted a highly restrictive" RFC finding "that accounted for Plaintiff's limitations, including reduced memory." Doc. 22 at 1.

**A.  Medical Opinions**

    **(1)  Standard**

Under the applicable regulations, no single medical opinion or medical source is given any deference or specific evidentiary weight, including controlling weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[4] The ALJ must evaluate the persuasiveness of medical opinions and prior

---

[3] Plaintiff's appeal does not raise issue with the lack of physical limitations in the ALJ's RFC. *See* Doc. 12.

[4] Plaintiff filed his applications after March 27, 2017. R. at 18, 197-206. Accordingly, 20 C.F.R. §§ 404.1520c and 416.920c apply.

administrative findings with consideration of five factors: supportability,[5] consistency,[6] relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, extent of treatment relationship, and examining relationship), specialization, and "other factors that tend to support or contradict a medical opinion…." *Id.* §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5). When an ALJ evaluates the persuasiveness of medical opinions, supportability and consistency are the "most important factors." *Id*. §§ 404.1520c(a), 416.920c(a).

In her decision, the ALJ must "articulate…how persuasive [she] find[s] all of the medical opinions…." *Id.* §§ 404.1520c(b), 416.920c(b). Three "articulation requirements" must be met. *Id.* §§ 404.1520c(b)(1)-(3), 416.920c(b)(1)-(3). First, "when a medical source provides multiple medical opinion(s)…[the ALJ] will articulate how [she] considered the medical opinions…from that medical source together in a single analysis using the factors" identified above. *Id*. §§ 404.1520c(b)(1), 416.920c(b)(1). Second, the ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions." *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2). Third, when the ALJ finds "two or more medical opinions… about the same issue are both equally well-supported…and consistent with the record…but are not exactly the same, [the ALJ] will articulate how [she] considered the other most persuasive factors" set forth above. *Id*. §§ 404.1520c(b)(3), 416.920c(b)(3).

---

[5] Supportability is defined as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[6] Consistency is defined as "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

### (2) Medical Opinions Considered by the ALJ

#### a. Krishnendu Ghosh, M.D.

In November 2017, Plaintiff began treatment with Dr. Krishnendu Ghosh. R. at 384. Dr. Ghosh, a psychiatrist, noted that Plaintiff complained of poor memory and observed Plaintiff had difficulty with remembering his long-term history. R. at 385. In December 2017 and February 2018, Plaintiff again reported difficulty with his memory to Dr. Ghosh. R. at 387, 390. In June 2018, Dr. Ghosh noted Plaintiff's memory was significantly impaired, but his "[a]ttention/concentration were intact," his "speech was well articulated, goal directed," and his thought process was "concrete." R. at 392. In July 2018, Dr. Ghosh noted Plaintiff's memory was impaired, but his speech was well articulated and logical, and his thought process was concrete. R. at 393. In October 2018, Dr. Ghosh again observed Plaintiff's speech was "well articulated, logical" and also described Plaintiff's thought process as "logical, goal directed." R. at 395. In December 2018, January 2019 and May 2019, Plaintiff's thought processes were described as either "logical" or "goal directed." R. at 425, 427, 429.

In May 2019, Dr. Ghosh completed a Medical Source Statement – Mental ("MSSM") opining Plaintiff would likely be off task twenty-five percent or more of the workday. R. at 491. Dr. Ghosh also indicated Plaintiff was markedly limited[7] in his ability to "understand and remember detailed instructions"; "maintain attention and concentration for extended periods"; "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; and "complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable

---

[7] "Markedly limited," according to the MSSM, is "[m]ore than Moderate, but less than extreme resulting in limitations that seriously interfere[] with the ability to function independently. Considered to be 2 standard deviations below the norm, or 60% overall reduction in performance." R. at 491.

number and length of rest periods." R. at 491-92.  Dr. Ghosh did not find Plaintiff was extremely limited in any area mental functioning.  *Id*.

### b. Fred Ulam, Ph.D.

In July 2018, Plaintiff underwent a neuropsychological evaluation by Dr. Fred Ulam.  R. at 291-308.  According to Dr. Ulam, Plaintiff's evaluation suggested that after the onset of epilepsy, he "in all probability experienced a decline in cognitive functioning from a previously higher overall level."  R. at 291-92.  Plaintiff's Immediate Memory Index from the Wechsler Memory Scale – IV (WMS-IV) was twenty-four standard score points lower than what was predicted for him.  R. at 292.  Further, Dr. Ulam found the results of the premorbid functioning analysis strongly suggested Plaintiff's greatest area of decline in cognitive functioning is memory.  *Id*.  According to Dr. Ulam, Plaintiff's neuropsychological impairments are mild to moderate, involve several different brain systems, and significantly impact his everyday life – including his ability to remember.  R. at 293.  More specifically, he opined Plaintiff had mild to moderate impairments in the areas of immediate and delayed recall.  R. at 302.

In July 2019, Dr. Ulam completed a MSSM.  R. at 422-23.  Therein, he opined Plaintiff was markedly limited in his ability to "remember locations and work-like procedures"; "carry out detailed instructions"; "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; and "get along with coworkers or peers without distracting them or exhibiting behavioral extremes."  R. at 422-23.  He further noted

7

Case 6:20-cv-03311-WBG   Document 25   Filed 03/31/22   Page 7 of 15

Plaintiff was extremely limited[8] in his ability to "understand and remember detailed instructions," "sustain an ordinary routine without special supervision," "respond appropriately to changes in the work setting," and "travel in unfamiliar places or use public transportation." *Id.* Dr. Ulam opined Plaintiff would be off task twenty-five percent or more of the workday. R. at 422.

   c. **Linda Skolnick, Psy.D.**

In November 2018, psychological consultative examiner Linda Skolnick, Psy.D., reviewed Plaintiff's medical records, including Dr. Ulam's neuropsychological evaluation report, and opined Plaintiff had no significant limitations in his ability to remember locations and work-like procedures; carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. at 145-46. Dr. Skolnick also found Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods, and understand, remember and carry out detailed instructions. R. at 145. According to Dr. Skolnick, Plaintiff maintained the ability to understand and remember "very short and simple instructions." *Id.* She further opined Plaintiff can "persist at simple tasks." R. at 146. Dr. Skolnick found no other significant limitations associated with Plaintiff's mental residual functional capacity. R. at 145-46.

---

[8] "Extremely limited," according to the MSSM, means "[i]mpairment level preclude[s] useful functioning in this category. Considered to be 3 standard deviations below the norm, or 90% overall reduction in performance." R. at 422.

### (3) The ALJ's Consideration of the Medical Opinions

The ALJ properly considered the medical opinions in this case when she found the opinions of Drs. Ulam and Ghosh to be unpersuasive. R. at 27-28. With respect to Dr. Ulam, the ALJ concluded his opinion was supported with "minimal rationale or explanation," and his assessment was inconsistent with his examination report. R. at 27. She specifically noted Dr. Ulam saw Plaintiff once, and that visit occurred one year prior to Dr. Ulam completing the MSSM. *Id*. According to the ALJ, Dr. Ulam's opinion was inconsistent because he found Plaintiff to have mild to moderate mental limitations as a result of his mild neurocognitive impairment, but he also opined Plaintiff retained many cognitive functions at an average to above-average level. *Id*. Further, Dr. Ulam's neuropsychological evaluation report indicated Plaintiff could focus and sustain attention without excessive distractibility, but his MSSM indicates Plaintiff would be off task at least twenty-five percent of the workday. *Id*. (citing B1F/7 (R. at 297); B5F (R. at 422)).

With regard to Dr. Ghosh, the ALJ found his opinion was unsupported by his treatment notes, and he failed to provide any narrative or rationale for his opinion. R. at 27-28. The ALJ observed that Dr. Ghosh's MSSM indicated Plaintiff is markedly limited in his ability to maintain attention and concentration for extended periods; however, in his treatment notes, Dr. Ghosh found Plaintiff exhibited "improved and intact attention and concentration with treatment." R. at 28 (citing B3F/9 (R. at 392); B6F/9 (R. at 432); B8F/3 (R. at 492)).

Plaintiff argues this matter must be remanded because the ALJ's analysis of Dr. Ulam's opinion "misstated the record and ignored relevant evidence regarding [Plaintiff's] mental functioning." Doc. 12 at 11. On the contrary, the ALJ's decision to find Dr. Ulam's opinion unpersuasive was not improper. Dr. Ulam saw Plaintiff once, and one year later, completed an MSSM. Further, his opinion that Plaintiff would be off task for at least twenty-five percent of the

workday is inconsistent with his observations that Plaintiff appeared to be able to focus and sustain his attention without excessive distractibility. Notably, other treatment providers made similar findings regarding Plaintiff's ability to concentrate and pay attention. *See e.g.*, R. at 319 (Dr. Roger Oghlakian[9], Plaintiff's neurologist, found Plaintiff to have normal attention span and concentration), 392 (Dr. Ghosh noted Plaintiff had intact attention and concentration).

Plaintiff also argues the ALJ's assessment of Dr. Ghosh's opinion "cherry-picked" from the treatment notes and relied "heavily on selected notes to the detriment of the record as a whole." Doc. 12 at 12. The record as a whole, however, supports the ALJ's decision to find Dr. Ghosh's opinion unpersuasive. For example, Plaintiff's examinations with Dr. Oghlakian were unremarkable – typically showing normal attention and concentration; normal "[l]anguage naming, repeating and comprehension"; good memory; intact immediate and short-term memory; normal thought process; adequate or good fund of knowledge; and adequate judgment and insight. R. at 316, 319, 348, 475.

The ALJ found Dr. Skolnick's opinion persuasive because it was consistent with the record as a whole. R. at 27. She noted Dr. Skolnick's findings that Plaintiff can understand and remember very short and simple instructions and persist in simple tasks were consistent with Dr. Ulam's finding that Plaintiff has mild to moderate memory impairments. *Id*. The ALJ also observed Dr. Skolnick's assessed limitations were consistent with Plaintiff's largely conservative treatment and his activities of daily living. *Id*. Although the ALJ found Dr. Skolnick's opinion to be "persuasive," the RFC included an additional limitation than Dr. Skolnick did not include – i.e., Plaintiff would be off task five percent of the workday, which was in consideration of Plaintiff's testimony. *Id*.

---

[9] Dr. Oghlakian, Plaintiff's treating neurologist, did not proffer a formal medical opinion in this case. As such, the ALJ did not afford any specific weight to his findings.

"It is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians." *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). An ALJ may properly reject the opinion of any medical expert if it is inconsistent with the medical record as a whole, or where a physician renders inconsistent opinions that undermine the credibility of such opinions. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); *Pearsall v. Massanari*, 274 F.3d 1211, 1218-19 (8th Cir. 2001). On review, this Court does not reweigh the evidence before the ALJ. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Even if a reviewing court would weigh the evidence differently, the reviewing court must nonetheless affirm the denial of benefits if there is substantial evidence to support the ALJ's finding. *Pearsall,* 274 F.3d at 1217.

After a careful review of the record, the Court finds that the ALJ's evaluation of the medical opinions in this case is consistent with regulatory requirements discussed above. Despite Plaintiff's claims to the contrary, substantial evidence in the record supports the ALJ's decision to find the opinions of Drs. Ulam and Ghosh "unpersuasive" and Dr. Skolnick's opinion "persuasive." Moreover, the ALJ's RFC imposed significant restrictions in recognition of Plaintiff's limitations. Further, the RFC contained an additional limitation – not set forth by Dr. Skolnick – to account for his allegation that he would be off task. The Court finds the ALJ's RFC is supported by substantial evidence on the record.

**B.     Subjective Complaints**

**(1)     Standard**

When evaluating a claimant's credibility as to subjective complaints, the ALJ considers several factors, including but not limited to "prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th

Cir. 2021) (quoting *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010)); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Objective medical evidence is also considered, but "the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." *Id*. (citation omitted). Further, the "ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted).

A reviewing court must "defer to the ALJ's determinations regarding" the credibility of testimony, including a claimant's subjective complaints, "so long as they are supported by good reasons and substantial evidence." *Guilliams*, 393 F.3d at 801 (citation omitted). This is because determinations about credibility "are the province of the ALJ," and therefore, this Court "will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (citations omitted).

**(2)    The ALJ's Consideration of Plaintiff's Subjective Complaints**

Plaintiff argues the ALJ failed to provide sufficient reasons for discrediting his allegations about the frequency and intensity of his mental health symptoms. Doc. 12 at 6-7.[10] In determining Plaintiff's RFC, the ALJ considered, *inter alia*, the credibility of Plaintiff's subjective complaints. R. at 18-30. The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms to be inconsistent with the medical evidence in the record. R. at 24. In support of her finding, the ALJ properly considered Plaintiff's treatment history. R.

---

[10] Plaintiff cites SSR 16-3p in support of his argument. SSR 16-3p states, in relevant part, an ALJ's RFC "must contain specific reasons for the weight given to the individual's [description of her physical impairments], be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's [description of her physical impairments]." SSR 16-3p, 2017 WL 5180304 at *8-9 (Oct. 25, 2017).

at 25-27. For example, the ALJ observed Dr. Oghlakian indicated Plaintiff's epilepsy was well-controlled with medication, and in October 2019, Plaintiff had not experienced a seizure in six months. R. at 27; *see also* R. at 313, 472. Consequently, the ALJ accounted for seizure-related absences by finding Plaintiff would be absent two days every six months. R. at 23.

With regard to Plaintiff's mental impairments, the ALJ observed he received conservative treatment in the form of medication management and his symptoms improved when he was complaint with medication. R. at 25. For example, in February 2018, Plaintiff reported improvement in his mood after Dr. Ghosh prescribed medication for his depression. R. at 25; *see also* R. at 386, 389. Since then, Plaintiff's mental health symptoms have improved, and he continued to report feeling well overall. R. at 25-26, 431-32.

In addition, the ALJ appropriately considered Plaintiff's activities of daily living. R. at 25. Based on Plaintiff's testimony, the ALJ found Plaintiff is capable of conducting research on the internet with his mother, playing video games with his son, reading short books and magazines, attending church weekly, preparing crockpot meals, handling his own personal care, and shopping in stores. R. at 25;

Furthermore, the objective medical evidence also supports the ALJ's decision to discredit Plaintiff's subjective complaints. For example, the ALJ considered Plaintiff's neurology appointments with Dr. Oghlakian in which he was found to be alert and oriented, with good memory and fund of knowledge. R. at 24-25, 342. And in February 2018, Plaintiff presented to a different doctor who worked for Dr. Oghlakian who also reported Plaintiff had normal attention span, concentration, language naming and repeating, and comprehension. R. at 25, 319. This doctor also noted Plaintiff's immediate and short-term memory were intact. *Id*.

In addition to the neurology appointments, Plaintiff also underwent a neuropsychological evaluation with Dr. Ulam. As discussed *supra*, Dr. Ulam found Plaintiff likely experienced a decline in cognitive function – with the greatest decline found in memory. R. at 291-92. Contrary to this, however, Dr. Ulam also found Plaintiff remained in the average or above-average level in several neuropsychological areas. R. at 22, 292. Dr. Ulam opined Plaintiff's impairments were mild-to-moderate in severity which might preclude him from successfully performing his usual work as a service-department manager. R. at 22, 293. These findings were all considered and are all consistent with the RFC limiting Plaintiff to understanding, remembering, and carrying out uncomplicated commands involving simple instructions and making simple, work-related decisions. The ALJ agreed that Plaintiff would not be able to return to his past relevant work as a service manager at a car dealership. R. at 28.

She further considered the objective medical records from Plaintiff's psychiatrist, Dr. Ghosh. For example, the ALJ recognized that Dr. Ghosh found Plaintiff had significant difficulty with his memory. R. at 25; *see also* R. at 385, 387, 392-93, 429-30, 432. And although he had poor or reduced concentration at times, Plaintiff also exhibited normal or intact attention at later treatments. R. at 22, 319, 385-87, 392, 432. In consideration of the objective medical evidence, the ALJ found Plaintiff suffers from severe mental impairments with resulting functioning limitations, but that said impairments do not result in more than a moderate limitation in the area of understanding, remembering, or applying information as well as concentrating, persisting, or maintain pace.

Based on the foregoing, the Court finds the ALJ properly discounted Plaintiff's subjective complaints, and her decision is supported by substantial evidence in the record as a whole.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the Commissioner's decision is supported by substantial evidence on the record as a whole, and therefore, is **AFFIRMED**.

**IT IS SO ORDERED.**

DATE:     March 31, 2022              */s/ W. Brian Gaddy*
                                      W. BRIAN GADDY
                                      UNITED STATES MAGISTRATE JUDGE